***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The undersigned finds as fact and concludes as a matter of law the following which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Builders Mutual Insurance Company was the workers' compensation carrier for defendant-employer on November 16, 2000.
3. An employment relationship existed between plaintiff and defendant-employer at all relevant times.
4. Plaintiff sustained compensable injuries to the left shoulder and neck on November 16, 2000, which were accepted by defendants via Forms 63 and 62.
5. Plaintiff's average weekly wage on the date of his compensable injury was $884.94, which yields the maximum compensation rate for 2000 of $588.00.
6. Temporary total disability benefits were paid by defendants to plaintiff at the maximum compensation rate for 2000 of $588.00, and said benefits were suspended as of October 25, 2001 per Form 28B.
7. Medical compensation was paid by defendants for plaintiff through March or May of 2002.
8. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1 — Industrial Commission forms
b. Stipulated Exhibit #2 — Pre-hearing discovery and accompanying correspondence
c. Stipulated Exhibit #3 — Plaintiff's Recorded Statement
d. Stipulated Exhibit #4 — Plaintiff's medical records compiled by defendants
e. Stipulated Exhibit #5A — Plaintiff's medical records compiled by plaintiff regarding the original compensable injury
f. Stipulated Exhibit #5B — Plaintiff's medical records compiled by plaintiff regarding the subsequent injury
 ***********
Based upon the competent and credible evidence of record in this matter, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 59 year-old male who worked for defendant-employer as a theatrical installer. Plaintiff tore his rotator cuff in 1980 and had left rotator cuff surgery in 1982.
2. On November 16, 2000, plaintiff sustained injuries to his left shoulder and neck while working for defendant-employer. Defendants accepted plaintiff's claim and paid temporary total disability benefits from November 16, 2000 through October 25, 2001, as well as provided medical treatment through May 2002.
3. Following his injuries, plaintiff sought treatment from his family physician, Dr. Walter. Plaintiff then received treatment from Dr. Shapiro, an orthopaedist, who treated him only for his shoulder. Dr. Shapiro determined that plaintiff had reached maximum medical improvement for his shoulder condition as of February 9, 2001 and released plaintiff to return to work with no restrictions as of that date. Dr. Shapiro assigned plaintiff a 0% permanent partial disability rating to the shoulder.
4. Dr. Shapiro referred plaintiff to Dr. Stein, a neurologist. Dr. Stein treated plaintiff for his thoracic and cervical spine, as well as neurological problems, and released plaintiff to return to work with no restrictions in July 2001. Dr. Stein also determined that plaintiff had a 0% permanent partial disability rating for his thoracic and cervical spine.
5. Based upon plaintiff's release to return to work with no restrictions, defendants filed a Form 24 Application with the Industrial Commission to terminate his disability benefits. By Order filed September 25, 2001, the Industrial Commission disapproved defendants' application.
6. Defendants filed an Industrial Commission Form 28 Return to Work Report with the Commission indicating that plaintiff had returned to work with Construction Aspex in Tampa, Florida on August 30, 2001. At the hearing before the deputy commissioner in this matter, as well as during the Form 24 proceedings in this case, plaintiff denied that he returned to work with Construction Aspex on August 30, 2001. Plaintiff requested that Construction Aspex complete a second Form 28 that changed his return to work date from August 30, 2001 to September 20, 2001, two days after the Form 24 hearing in this case. Plaintiff began working with Construction Aspex in Tampa, Florida on September 20, 2001.
7. Plaintiff admitted that he accepted workers'compensation checks while simultaneously working, and he did not advise defendants of this fact until he learned that they were aware that he had returned to work from their private investigator. Defendants continued paying plaintiff weekly benefits until October 25, 2001, and plaintiff cashed checks from defendants from August 30, 2001 through October 25, 2001. Defendants sent plaintiff an Industrial Commission Form 90 Report of Earnings for the period November 17, 2000 through October 30, 2001 for signature, however, there is insufficient evidence to determine whether plaintiff signed and submitted the Form 90.
8. Plaintiff's position with Construction Aspex ended on March 15, 2002. Plaintiff then contacted defendants on March 17, 2002 and requested that they restart his temporary total disability benefits. Defendants refused this request. Additionally, Plaintiff returned to Dr. Shapiro on May 15, 2002 and requested that Dr. Shapiro complete an Industrial Commission Form 28U Unsuccessful Attempt to Return to Work. Dr. Shapiro refused this request.
9. On June 11, 2002, plaintiff performed power washing at the Red Barn Door Tavern and indicated that he was compensated in beer for his work that day. Plaintiff also performed work at a construction site on June 13 and June 14, 2002 and earned $50.00 per day on those two dates. Plaintiff also worked on February 24, 2003, March 19, 2003 and March 20, 2003, earning $50.00 per day. Plaintiff applied for and collected unemployment benefits at the rate of $275.00 per week from July 7, 2002 through April 5, 2003 and certified that he was physically able to work, at least in some capacity, during that time.
10. On June 14, 2002, plaintiff was stopped by law enforcement officers, after he finished working that day, and was charged with DUI, refusal to accept a citation, and driving with no headlights on at night. Law enforcement officers forcibly restrained plaintiff, resulting in plaintiff sustaining a severely separated shoulder and torn rotator cuff in two places. As a result, plaintiff underwent surgery with Dr. Shapiro on June 27, 2002. During the hearing, the plaintiff indicated that he is not alleging that the June 2002 surgery, or any subsequent shoulder treatment or disability, is the responsibility of defendants.
11. The Full Commission finds that plaintiff has retained no additional disability as a result of his November 16, 2000 injuries. Dr. Shapiro is a board-certified orthopaedic surgeon who treated plaintiff for his shoulder injury. Dr. Shapiro first saw plaintiff on December 6, 2000 and Dr. Shapiro ordered an x-ray of plaintiff's shoulder, which was negative for dislocation. On February 9, 2001, Dr. Shapiro indicated that plaintiff was not having any problems with his shoulder and determined that plaintiff was at maximum medical improvement and released plaintiff to return to work with no restrictions. Dr. Shapiro also assigned a 0% permanent partial disability rating to plaintiff's shoulder at that time. Dr. Daniel P. Stein, a board-certified neurologist, also treated plaintiff and released him to return to work with no restrictions in July 2001 and determined that plaintiff had reached maximum medical improvement and retained a 0% permanent partial disability rating to the neck and upper back.
12. Not only did plaintiff's treating physicians release him to return to work with no restrictions, plaintiff did, in fact, return to work. Specifically, plaintiff returned to work with Construction Aspex in Tampa, Florida on September 20, 2001 and worked for six months earning $1,000.00 per week, along with benefits. Plaintiff's work with Construction Aspex was very physical and involved much use of plaintiff's left arm. Plaintiff also performed power washing at the Red Barn Door Tavern on June 11, 2002, as well as worked on a construction site on June 13 and June 14, 2002, earning $50.00 per day. Plaintiff also earned approximately $50.00 per day on February 24, 2003, March 19, 2003 and March 20, 2003. Plaintiff's return to work on August 30, 2001 is further evidence that he has retained no disability as a result of his November 16, 2000 injuries.
13. Plaintiff's medical condition subsequent to July 2001 is unrelated to his employment with defendant-employer. Plaintiff returned to Dr. Shapiro on May 15, 2002, and requested that Dr. Shapiro complete an Industrial Commission Form 28U Unsuccessful Attempt to Return to Work, which Dr. Shapiro refused to complete. Dr. Shapiro's May 15, 2002 note indicates that plaintiff had been working for nine months, at full duty, prior to being released by his foreman and stated that plaintiff did not think he had been out of work the last three months because of his shoulder, but instead, because of his inability to locate employment. Moreover, a May 2002 MRI of plaintiff's shoulder did not reveal a rotator cuff tear but an old spur and old tear of his labrum. On June 14, 2002, plaintiff was involved in an altercation with police officers when he was stopped and charged with DUI, refusal to accept a citation, and driving with no headlights on at night. The altercation resulted in plaintiff's suffering a separated shoulder and a torn rotator cuff in two places. Dr. Shapiro performed surgery on plaintiff on June 27, 2002, and plaintiff kept his arm in a sling for six weeks after his June 27, 2002 surgery which was paid for by the police department. Plaintiff's shoulder had completely resolved by February 2001 and any disability or medical treatment is the responsibility of his subsequent employer or as a result of his altercation with police officers on June 14, 2002.
14. Any benefits paid by defendants subsequent to the filing of their Form 24 were not "due and payable" under the Act. The evidence establishes that plaintiff's treating physicians released him to return to work with no restrictions as of July 18, 2001 and plaintiff did in fact return to work shortly thereafter.
15. The Full Commission finds that plaintiff may have committed fraud in this case by working and simultaneously receiving cash and disability checks provided by the defendants.
16. Defendants had to incur numerous unnecessary expenses in this case due to plaintiff's failure to fully respond to defendants' discovery requests and comply with orders of the Industrial Commission. Defendants served plaintiff with two sets of pre-hearing discovery in this case. Plaintiff did not fully answer defendants' discovery, which resulted in the Executive Secretary issuing an Order on January 27, 2003 directing plaintiff to fully answer all of defendants' discovery requests. Despite the January 27, 2003 Order, plaintiff still refused to answer defendants' discovery requests, which resulted in Deputy Commissioner Phillip Baddour issuing another Order on February 22, 2003, ordering plaintiff to completely answer defendants' discovery requests. As of the date of the hearing, plaintiff had not provided complete and sufficient answers to defendants' discovery requests, despite the two Industrial Commission Orders.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following additional
 CONCLUSIONS OF LAW
1. Plaintiff suffered compensable injuries to his neck and shoulder on November 16, 2000. N.C. Gen. Stat. § 97-2(6).
2. Defendants have established that plaintiff sustained no additional disability as a result of his November 16, 2000 injuries by showing that plaintiff's treating physicians released him to return to work with no restrictions, that plaintiff did in fact return to work, and that plaintiff's medical condition subsequent to July 2001 is related to conditions separate and apart from his November 16, 2000 injury or defendant-employer. Harrington v. Adams-Robinson Enter, 349 N.C. 218,504 S.E.2d 786 (1998).
3. The Industrial Commission erred in disapproving defendants' Form 24 Application, and defendants are entitled to a credit for benefits paid subsequent to the filing of their Form 24 Application as all benefits paid during that period were not "due and payable" under the Act. N.C. Gen. Stat. § 97-42.
4. Plaintiff may have perpetrated a fraud on defendants, as well as on the Industrial Commission, by cashing the disability checks from defendants while simultaneously working for another employer and earning wages. N.C. Gen. Stat. § 97-88.2.
5. Defendants have incurred expenses in the defense of this claim due to plaintiff's failure to fully cooperate and fully respond to pre-hearing discovery and comply with Industrial Commission Orders in this case. Defendants shall therefore be entitled to attorney's fees incurred as a result of numerous motions to compel responses to discovery filed with the Industrial Commission N.C. Gen. Stat. § 97-88.1.
 ***********
The foregoing Findings of Fact and Conclusions of Law result in the following
 AWARD
1. Plaintiff's claim for additional benefits is hereby DENIED.
2. Defendants are hereby entitled to attorney's fees incurred as a result of plaintiff's failure to fully respond to defendants' discovery requests and comply with the Industrial Commission Orders instructing him to do so and as a result of plaintiff's fraud. Defendants' attorney's fees shall be deducted from any compensation that plaintiff may be awarded in the future in this case.
3. Based upon the testimony in this matter, plaintiff may have violated N.C. Gen. Stat. § 97-88.2 and this matter is hereby referred to the Fraud Unit of the North Carolina Industrial Commission for investigation.
4. Each side shall bear its own costs.
This the 22nd day of December 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/llc